GANDÍA, PLAINTIFF AND APPELLANT, *v.* PORTO RICO FERTILIZER
Co., DEFENDANT AND APPELLEE.

APPEAL from the District Court of San Juan in an Action
to Recover Dividends, Etc.

No. 2046.—Decided June 1, 1920.

NONSUIT.—In Porto Rico, as in California, in considering a motion for nonsuit
the court will consider merely whether the evidence introduced by the plain-
tiff makes out a *prima facie* case.

ID.—EXCEPTION—APPEAL.—A judgment of nonsuit is a final decision within the
meaning of section 213 of the Code of Civil Procedure; therefore in or-
der to be appealable such judgment need not be excepted to, for it is deemed
to have been excepted to by operation of law.

EVIDENCE.—Although it is required to produce the best evidence to prove the
facts at issue, the meaning of that rule is that while the original evidence
can be obtained substitutionary evidence will not be admitted, but the rule
is not infringed when the party selects equivalent or weaker evidence when
he could have obtained stronger evidence, or omits to supply all the proofs
capable of being produced.

ID.—PRESUMPTION OF CONTINUITY.—Evidence of having been the owner of stock
at a time in the past justifies the application of the rule of continuity of
ownership contained in subdivision 31 of section 102 of the Law of Evi-
dence.

ID.—OJBECTION.—Any probative fact is admissible as proof until due objection
is made.

ESTOPPEL.—A person is not estopped from recovering from another by casual or
incidental statements made in acts or contracts, or even in actions with third
persons, unless his statements or acts had misled the other person.

The facts are stated in the opinion.

*Mr. J. de Guzmán Benítez* for the appellant.

*Messrs. C. Coll Cuchí* and *G. Cruzado Silva* for the
appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The Porto Rico Fertilizer Company is the defendant in
this case. When the corporation was first incorporated the
stock was divided as follows: 250 shares to the Virginia
Carolina Chemical Company of Richmond, Virginia; 125
shares to the firm of Gandía & Stubbe; 60 shares were shown
in the articles of incorporation to belong to Stubbe and 60
shares to the complainant Pedro Gandía; 3 to Federico
Stubbe and 2 to Hector Cestero. In the complaint there

is a reference to the first dividend declared, but at the trial it was shown that the parties were referring to the second dividend. The complainant maintains that of this second dividend $8,234.06 were payable on his sixty shares and that the amount of the dividends remained in the coffers of the company.

A short time after the declaration of these dividends, or on July 24, 1916, the firm of Gandía & Stubbe was dissolved. There were articles of dissolution, the interpretation of which is one of the principal matters in controversy in this action. The other matter of importance is the ownership of the $8,234.06.

The answer of the defendant set up that while the sixty shares appeared in the articles of incorporation to belong to Gandía, the said sixty shares and the sixty shares belonging to Stubbe were in reality the property of the firm of Gandía & Stubbe; that of the 500 shares of the Porto Rico Fertilizer Company, 250 belonged to the directors of the Virginia Carolina Chemical Company and 250 to Gandía & Stubbe, and the defendant corporation also alleges that the $8,234.06 claimed by Gandía as well as the $8,234.06 which appears to the credit of Stubbe was a dividend, not on the 120 shares alleged to belong individually to Gandía and to Stubbe but on the whole 250 shares of Gandía & Stubbe, and the corporation also says that upon receiving a notice that Gandía had sold his shares to Stubbe it paid the whole sum of $16,250 to Stubbe.

The case went on to trial and on motion of the defendant the court rendered judgment of nonsuit in its favor. The court, after summing up some of the foregoing facts and the nature of a motion for nonsuit wherein all the facts stated by the complainant must be accepted as true, found that the complainant Gandía had not successfully proved his ownership of the sixty shares. The court found that proof of the fact that Gandía was the owner of sixty shares

at the time of the incorporation of the company is not proof that he was the owner to-day and that the best, proper and competent proof in the case was the books of the company. The court also found that in the article of dissolution $8,234.06 were assigned individually to Gandía and to Stubbe, but that, on the other hand, this whole sum of $16,468.12 was set forth as an asset of Gandía & Stubbe and that therefore the complainant was not in a condition to go against the facts thus set forth in the said articles.

The appellee maintains that the court below, in consider- ing a motion of nonsuit, is not bound, as in California, merely to consider whether there is proof tending to make out a *prima facie* case, but, as we understand the appellee, can weigh the whole proof and resolve a possible conflict. Section 192 of the Code of Civil Procedure says an action will be dismissed, or judgment of nonsuit entered, in the fol- lowing cases:

"(5) By the court upon motion of the defendant when, upon a trial, the plaintiff fails to prove a sufficient case upon which to base a judgment."

The corresponding provision in California was:

"(5) By the court upon motion of the defendant when upon the trial the plaintiff fails to prove a sufficient case for the jury."

The difference between these two sections, we hold, is just the fact that in Porto Rico there is no jury in civil cases in the insular courts. Otherwise, the rules governing nonsuits remain unchanged and we have so applied them in *Vargas v. Monroig,* 15 P. R. R. 26, and *Méndez v. Banco Comercial,* 26 P. R. R. 586. We also applied the rule in criminal cases where the court had rendered judgment of nonsuit in favor of defendants. Even if appellee was right, it is evident that the court below was not entering into the weight of the proof, but was only considering whether it was sufficient. It is evident, too, that a court should not be

called upon twice to pass upon the credibility of witnesses. The idea of the word "nonsuit" implies that the complainant has not made out a *prima facie* case. We may say in passing that the final conclusion at which we have arrived would follow whether the court was passing upon the question of the existence of a *prima facie* case or whether upon the merits of the case as submitted.

The appellee also alleged that the order on a motion of nonsuit must be excepted to. This has not been the practice in this jurisdiction. Section 192 of the Code of Civil procedure says that judgment of nonsuit may be entered, etc., and section 213 says that the final decision and action * * * shall be deemed to have been excepted to. A judgment of nonsuit is such final decision.

The court was in error in holding that Gandía had not proved *prima facie* his ownership of the sixty shares. Not only did he so testify, but the articles of incorporation show that he was the owner of the said sixty shares, and his ownership once being shown, the presumption of its continuance exists as set forth in section 102 of the Law of Evidence and as decided by us in *Fulladosa* v. *Castro,* 27 P. R. R. 644, and cases therein cited.

The court was under a mistaken impression that the rule of best evidence applied to the proof of ownership in this case. 17 Cyc. 505, says:

"Where a record of the acts and proceedings of a private corporation is required by law to be kept, such record constitutes the best evidence of its contents, and parol evidence is not admissible if the record is accessible. The foregoing rule, however, is not of unlimited scope; independent facts of which a witness has personal knowledge may be proved by his testimony, notwithstanding that they may also appear upon the records of the corporation."

And in 10 R. C. L. 903, the statement of the rule is set forth as follows:

"The best obtainable evidence should be adduced to prove every

disputed fact, and a failure to produce it, but an attempt instead to sustain the issue by inferior evidence, will authorize the inference that the party does not furnish the best evidence because it would tend to defeat, instead of sustaining, the issue on his part. In requiring the production of the best evidence applicable to each particular fact, it is meant that no evidence shall be received which is merely substitutionary in its nature, so long as the original evidence can be had. The rule excludes only that evidence which itself indicates the existence of more original sources of information; but where there is no substitution of evidence, but only a selection of weaker instead of stronger proofs, or an omission to supply all the proofs capable of being produced, the rule is not impinged. The warden of a penitentiary would perhaps be able to give the strongest proof that a person had been, at a particular time, a convict imprisoned in the penitentiary, as he keeps a registry in which is noted the exact time of the admission and discharge of the convict; but the fact may be shown by any other competent proof.'' ·

As in the example cited of the warden of a penitentiary, a stock book of a corporation might be some proof of the ownership of the stock, but it would not be the sole proof, and this is manifest if for no other reason than that stock which is transferable frequently is never entered into the books of the corporation at all after it is transferred. The ownership of the stock is a fact that usually precedes the entry by a clerk or secretary in the stock book of the corporation. The production of the stock would perhaps be the best proof, but here it is conceded that Gandía had not the possession of the stock and the articles of dissolution and the whole proof show that Gandía gave up any claim on the stock of the corporation.

Not only is the foregoing true, but Gandía was allowed to introduce the articles of incorporation showing his ownership without objection and likewise he stated that he owned the shares at one time, also without objection. It has frequently been decided that any probative fact is admissible as proof until due objection is made. So that it was clear

that there was proof tending to show that Gandía was the owner of the sixty shares of stock.

The articles of dissolution several times refer to a transfer by Gandía to Stubbe of his shares in the company, thus also giving color to the claim of Gandía that he was the owner of the said sixty shares of stock.

The court is also mistaken when it attempts to apply a rule of estoppel against Gandía because the $16,468.12 declared as dividend was placed among the assets of Gandía & Stubbe. *Prima facie* at least, Gandía explains this very well, namely, that as he and Stubbe were equal partners he was entitled to half of anything that was declared and it probably made no difference to him that in the statement of the assets these sixteen thousand dollars were put down as belonging to the partnership rather than to Gandía and Stubbe individually. As against this finding of the court the articles of dissolution, however, specifically gave Gandía a credit of $8,234.06 for dividends declared in the Porto Rico Fertilizer Company and he testifies that this sum was never paid to him. The articles of dissolution thus also tend to show that these $8,234.06 were retained by the defendant as he testifies. It is true that Gandía began a suit first against Stubbe under the theory that Stubbe had gotten possession of this money and hence he sued him, as he explained, for damages. If it is a fact that these $8,234.06 were still in the possession of the defendant at the time of the dissolution and the corporation had notice through its officers of the facts of such dissolution, then the company would be answerable to Gandía no matter what casual or incidental statements Gandía may have made either in the articles of dissolution or in his individual suit against Stubbe. Gandía could never be estopped unless something that he had said or done had misled the Porto Rico Fertilizer Com-

pany. On the *prima facie* showing here at least the officers of the Porto Rico Fertilizer Company and the members of the firm of Gandía & Stubbe were to a great extent the same and the knowledge of the Porto Rico Fertilizer Company is strongly indicated. There was quite a strong showing that Gandía was the owner of $8,234.06 of dividends and that the same had never been paid to him or to Gandía & Stubbe. The answer denies these facts, but that is a matter of defense.

So far as the defendant was concerned, the record legally showed that Gandía was the owner of the sixty shares, no matter what the interior arrangement of Gandía and Stubbe was, so that *prima facie* Gandía was entitled to whatever dividend was declared on these shares, whether it was $8,234.06 or less. The partners must have been talking about something when they said in the articles of dissolution that Gandía would transfer his shares to Stubbe. Now, whether this transfer referred to the sixty shares or to the interest of Gandía in all the shares of Gandía & Stubbe, by the same token Gandía should be held to be entitled to the dividends already declared corresponding to these shares and the variance between the complaint and the proof would be immaterial. Hence, as $8,234.06 was credited to him in the dissolution, he would seem to be entitled to this amount.

We have not entered more fully into the evidence because that is really a matter for the trial court. We have recited enough to show that a *prima facie* case was made out and hence the judgment must be reversed and the case sent back for a new trial.

*Reversed and remanded.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.